AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave Suite C, #336
Alameda CA 94501
Telephone:  510/832-5001
Fax:   510/832-4787
info@cleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALL ACCESS LAW GROUP
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER,<br><br>            Plaintiff,<br><br>     vs.<br><br>TARPY'S ROADHOUSE, LLC; BLUE OCEAN VENTURE HOLDINGS, INC; DOWNTOWN DINING, INC.; RIO RESTAURANTS CORPORATION; COSTAL ROOTS HOPSITALITY; JAMES D. MEADOR; LUANN S. MEADOR;<br>            Defendants | **Case No.** 25-cv-5762<br><br>*Civil Rights*<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES
1

JAMES ALGER ("Plaintiff") complains of TARPY'S ROADHOUSE, LLC; BLUE OCEAN VENTURE HOLDINGS, INC; DOWNTOWN DINING, INC.; RIO RESTAURANTS CORPORATION; COASTAL ROOTS HOSPITALITY; JAMES D. MEADOR; LUANN S. MEADOR (collectively, "Defendants") as follows:

## INTRODUCTION

1.     This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business located at or about 2999 Salinas Hwy Monterey, CA 93940 known as Tarpy's Roadhouse ("Restaurant" or "Tarpy's"). During his visit to Tarpy's, Plaintiff repeatedly encountered accessibility barriers, including, but not limited to, because Defendants' parking and paths of travel at Tarpy's were inaccessible to persons that rely on mobility aids, including Plaintiff.

2.     Defendants' lack of accessible facilities denied and continue to deny "full and equal" access required by Title III of the Americans with Disabilities Act of 1990 and related California civil rights laws. As a result, Plaintiff has been continuously denied full and equal access to Tarpy's and has been embarrassed and humiliated. Plaintiff seeks damages and injunctive relief requiring provision of access under the Americans with Disabilities Act of 1990 ("ADA") and injunctive relief for full and equal access and damages under California law. Plaintiff also seeks declaratory relief and recovery of reasonable statutory attorney fees, litigation expenses and costs under federal and state law.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action as a private attorney general pursuant to 42 U.S.C. § 12188 and 28 C.F.R. § 36.501(a), having been personally subjected to discrimination on the basis of his disability. These provisions expressly authorize private individuals to seek injunctive relief to enforce the public rights guaranteed under Title III of the Americans with Disabilities Act.

3.     This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq*. Under supplemental jurisdiction, attendant and related causes of action, arising from the same facts, are also brought under California law,

including, but not limited to, violations of Health and Safety Code and the Unruh Civil Rights Act.

4. Venue is proper in this court under 28 U.S.C. § 1391(b) and is founded on the fact that the real property that is the subject of this action is in this District and that Plaintiff's causes of action arose in this District.

5. **Intradistrict Assignment:** This case should be assigned to the San Jose intradistrict as the real property which is the subject of this action is in this intradistrict and Plaintiff's claims arose in this intradistrict.

## PARTIES

6. Plaintiff JAMES ALGER ("Plaintiff") is, and at all times relevant was, a qualified individual with a physical disability. He has been diagnosed with Charcot-Marie-Tooth disease ("CMT"), a progressive, inherited neuropathy that affects the peripheral nerves responsible for motor and sensory function in the hands, arms, legs, and feet. A subsequent work injury accelerated the progression of his symptoms. As a result, Plaintiff experiences severe difficulty walking, impaired fine motor coordination, and limited range of motion. He requires the use of a a wheelchair or scooter for mobility ("Wheelchair") for mobility, and drives a vehicle equipped with hand controls. Plaintiff is also the holder of a permanent disabled parking placard issued by the State of California, which has been assigned to him continuously since approximately 1994.

7. Defendants are and at all relevant times were the owners, operators, lessors, and/or lessees of the subject business, property, and buildings relevant to this Complaint.

8. Defendants failed to ensure that the accommodations, goods, services, and opportunities were accessible to Plaintiff and other members of the public who have physical disabilities. Defendants' failure to comply with federal and state access laws proximately caused the violations and ongoing violations and damages to Plaintiff complained of here.

9. Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here

within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of here. All actions alleged here were done with the knowledge, consent, approval, and ratification of each of Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

10. Defendants discriminated against Plaintiff by failing to ensure that the Restaurant's amenities and policies comply with the requirements of the ADA. Defendants have not provided individuals with disabilities—including Plaintiff—with full, equal, and independent access to the same services, benefits, and accommodations offered to nondisabled patrons.

11. Specifically, the Restaurant and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms, are inaccessible to Plaintiff and cause him difficulty to use. Each is also a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7).

12. On information and belief, Tarpy's and its facilities have, since January 26, 1993, undergone construction, alterations, structural repairs, and/or additions, subjecting the facility to disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183). Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations. Irrespective of the Restaurant's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

13. Plaintiff holds annual passes to multiple theme parks and attractions, including the Monterey Bay Aquarium, which provides access to the aquarium throughout the year.

14. On the evening of July 5, 2025, Plaintiff, who was visiting the Monterey Bay Aquarium over the July 4 weekend, was traveling along State Route 68 following a day at the aquarium.

Tarpy's is located approximately six miles from the aquarium and sits directly along the natural connection between Monterey and U.S. Route 101, making it a convenient and logical stop for Plaintiff and other travelers entering or leaving the area. Because Plaintiff must pass this location in both directions when visiting Monterey, it serves as an ideal option for lunch on the way in or dinner on the way out. One of the reasons Plaintiff chose Tarpy's in particular was because of explicit representations online that one of its features was ADA compliant facilities (https://tarpys-roadhouse.cuba-cafe.com). This type of representation is exceedingly rare; most businesses avoid detailing their accessible features or leave them entirely unmentioned. For members of the disability community, this absence often signals that accessibility is an afterthought. As someone who is used to being overlooked or marginalized by hospitality providers, Plaintiff viewed this accessibility representation as a promising and welcome gesture. It indicated not just legal compliance, but a conscious effort to acknowledge and include disabled patrons. On this occasion, Plaintiff stopped for dinner and enjoyed a well-prepared meal—consistent with Tarpy's reputation as a popular and well-regarded local restaurant. Its favorable location along a familiar and frequently traveled route, combined with the quality of the dining experience and the advertised accessibility, made it a practical and attractive stop during trips to the region.

15. Upon pulling into the parking lot from the Monterey-Salinas Highway, Plaintiff immediately observed that the designated disabled parking spaces lacked several required accessibility features. While faint and deteriorated pavement markings suggested where accessible spaces had once been designated, there were no upright signs displaying the International Symbol of Accessibility, no signage indicating van accessibility, and no "NO PARKING" warnings marked within the access aisles. The layout itself was problematic: the accessible parking was split, with two spaces located on the right side of the entrance drive and one isolated space on the left, closer to the restaurant entrance. Strikingly, there appeared to be ample room to locate all three spaces together on the left side of the drive, where pedestrian access to the entrance would be more direct, safer, and more consistent with accessibility best

practices. The two right-side spaces lacked any designated pedestrian route, forcing disabled patrons to navigate across an active vehicle drive lane to reach the entrance. Meanwhile, the lone space on the left side—while closer to the entrance—lacked an access aisle entirely, making it unusable for most wheelchair users. In fact, upon arrival, there was a vehicle with a disabled placard displayed belonging to another guest at the restaurant, that had to park partially into the adjacent space so that the guest would have room to transfer. The access aisles striping and markings were exceptionally faded, especially in low-light conditions.

16. Based on these initial observations, Plaintiff's intent was simply to send the establishment a courtesy letter—advising them of the applicable federal and state signage requirements, including the need to post penalty warnings and towing enforcement language. As someone who has been personally affected by the misuse of unmarked accessible spaces, Plaintiff understands the real-world consequences of such omissions—but nevertheless does not believe that every technical violation warrants federal litigation in the absence of more serious deficiencies. In Plaintiff's experience, the disabled parking area tends to be a window into the soul of the business establishment when it comes to accessibility. So, Plaintiff believes that if one is talking about just a few signs and some paint, that is not something that Plaintiff feels is deserving of federal litigation. It is when it goes beyond that, or if a business becomes intransient and refuses to comply with the ADA that litigation is initiated, as is the case here. .

17. Upon exiting his vehicle and attempting to transfer into his wheelchair, Plaintiff experienced significant and unexpected difficulty due to the slope and cross-slope of the space. The angle of the surface interfered with his balance and mobility, forcing him to navigate an unstable transition into his chair. What initially appeared to be a minor noncompliance issue quickly became a more serious and immediate concern. The angle of the pavement made standing feel precarious, introduced the risk of falling or tipping, and required extra physical effort and caution for even the most basic movements. .

18. In addition to the lack of required signage and excessive sloping, Plaintiff observed that there was no designated accessible route of travel from the disabled parking spaces to the

1  restaurant entrance. The layout of the lot forces individuals parked in two of the three accessible
2  spaces to cross an active driveway with no marked pedestrian path, no striping, no curb ramp,
3  and no physical separation from moving vehicles. The travel route from those spaces offers no
4  safe or direct access to the building—conditions that stand in direct contradiction to the intent of
5  federal and state accessibility laws, which require not just proximity, but safe, uninterrupted, and
6  clearly marked passage. What makes the situation more perplexing is that the restaurant already
7  has one accessible, albeit noncompliant, space located near the entrance on the opposite side of
8  the driveway, and there appears to be more than enough room in that area to relocate all
9  accessible parking spaces into a single, properly marked, and code-compliant location. Instead,
10 the current configuration requires Plaintiff and other disabled patrons to navigate an
11 unnecessarily hazardous path across an open vehicle drive lane—an arrangement that prioritizes
12 driver convenience over pedestrian safety. For Plaintiff, this was not just an inconvenience; it
13 was a stark example of how poor planning and noncompliance can turn a routine visit into a
14 dangerous and frustrating experience.

15  19.    Upon entering the property, Plaintiff passed an outdoor patio area used for dining. Based
16 on visual observation, the patio tables did not appear to offer any spaces clearly designed to
17 accommodate wheelchair users—none appeared to be designated as accessible or arranged in a
18 manner that would facilitate integrated wheelchair seating. Due to the unseasonably cold weather
19 that evening, Plaintiff did not attempt to sit outside and proceeded indoors. Inside the restaurant,
20 there was no signage or other indication that any tables were specifically designated as
21 accessible. The first table offered by staff was too small to accommodate Plaintiff while
22 remaining in his mobility device. Requesting a different table in front of other diners was
23 uncomfortable and embarrassing, highlighting the kind of public scrutiny that individuals with
24 disabilities routinely endure. The staff responded with professionalism and courtesy, offering to
25 move tables and make adjustments as needed, but their ability to resolve the issue was limited by
26 the layout and furniture available. Although Plaintiff was eventually seated and able to dine, the
27 experience involved unnecessary difficulty and discomfort that could have been avoided with

even minimal consideration of accessibility in the restaurant's design.

20. Prior to initiating this action, Plaintiff's counsel retained a qualified accessibility investigator to conduct a pre-litigation, sub rosa site inspection of the subject property in order to verify Plaintiff's observations and determine whether sufficient grounds existed to proceed with a formal complaint. The inspection confirmed numerous accessibility barriers, many of which substantiated Plaintiff's personal experience, and others that reflected additional areas of serious noncompliance.

21. With respect to the parking area, the inspector noted that required signage was absent, including both International Symbol of Accessibility signs and tow-away warning signage. The surface slopes of both the parking spaces and access aisles exceeded the 2% maximum permitted under the ADA, and the painted "No Parking" warning was either faded or entirely unreadable. The layout also failed to provide a safe accessible route to the entrance from the two spaces located on the opposite side of the entrance drive, forcing wheelchair users to roll behind parked vehicles and across the driveway. The single accessible space located near the restaurant entrance lacked any access aisle at all.

22. Inside the facility, the bar area did not offer an accessible dining surface or designated ADA-compliant seating. Similarly, no accessible tables were identified in the indoor dining area or the outdoor patio. In the restroom, conditions were particularly egregious: there was no door signage indicating accessibility, insufficient clearance at the door, and no turnaround space within the wash area. The stall itself lacked both the required clear space for wheelchair access and compliant grab bars, and the urinals and sink did not provide accessible features or adequate knee clearance. These deficiencies collectively represent serious and systemic violations of federal accessibility standards, many of which would pose not just inconvenience but actual danger or humiliation to individuals with mobility impairments.

23. These individual barriers to access are listed without prejudice to Plaintiff citing additional barriers to access after more detailed inspection by Plaintiff's access consultant, per the 9th Circuit's standing standards under *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008),

*Chapman v. Pier One Imports (USA), Inc.,* 631 F.3d 939 (9th Cir. 2011).

24. Plaintiff initially approached this matter with restraint. While the conditions at the property were disappointing and problematic, Plaintiff's first instinct was to offer the benefit of the doubt. However that changed when Plaintiff learned after his visit that Tarpy's was subject to another ADA lawsuit in federal court in 2004 for many of the same violations alleged here. Nothing had been done, so this lawsuit followed.

25. In that prior action, Defendants were placed on direct notice of numerous accessibility failures — including the absence of compliant parking signage, lack of accessible routes, and significant interior noncompliance. These are not minor technicalities; they are core obligations under federal and state law. Yet despite that legal action, and the passage of 21 years, Defendants have failed to fix even the most visible and easily correctable elements. There is still no compliant signage. The slopes remain out of specification. The restrooms are, by any standard, wholly inaccessible. The accessible parking configuration is dangerous and improperly designed. Nothing has changed. This is not oversight. It is willful disregard.

26. This matter is not merely about architectural barriers or isolated design flaws; it reflects a systemic policy failure. What Plaintiff encountered here goes beyond faulty construction — it is a sustained pattern, policy, and practice of indifference. The fact that these violations persist two decades after prior litigation shows a deliberate refusal to institutionalize compliance.

27. Plaintiff has no confidence that any corrective action taken in response to this lawsuit will be permanent unless it is compelled by a federal court and subject to ongoing judicial oversight. Without such accountability, any accessibility features added now in response to this action, may not remain leaving future disabled persons to deal with this issue again, and then file their own lawsuit.

28. Plaintiff holds annual membership credentials to the Monterey Bay Aquarium and frequently travels along State Route 68—the same route on which Tarpy's is located—making it a natural and convenient dining stop during visits to the region. Plaintiff had every intention of returning in the future, especially after enjoying an excellent meal during his initial visit. The

food was outstanding, the atmosphere inviting, and the dessert offerings were especially tempting—so much so that Plaintiff had looked forward to returning just to try them. However, the subsequent discovery that the restaurant had been sued in 2004 for many of the same accessibility issues and still failed to remedy them has compelled Plaintiff to take action . The lack of basic restroom accessibility, in particular, is not just inconvenient—it is exclusionary and unsafe as a hygiene issue. Plaintiff would love nothing more than to return and support this establishment, but he is not willing to compromise his dignity or safety to do so. Until substantial, permanent corrections are made—and disabled patrons are shown respect through action, Plaintiff is deterred from returning.

29. Plaintiff alleges that it would be a futile gesture to attempt future visits while these barriers remain unremedied, but he anticipates that continued or attempted visits to the area will occur regularly following the filing of this Complaint. Accordingly, Plaintiff reserves the right to supplement this Complaint at the time of trial to address any subsequent events or instances of deterrence according to proof.

30. Defendants were aware or reasonably should have been aware, that certain aspects of their establishment and their policies made Tarpy's inaccessible, constituting a violation of federal and state laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendants possess the necessary financial means to eliminate these obstacles and make Tarpy's accessible to people with physical disabilities. But Defendants have not taken action to remove these barriers or to ensure full and equal access to the facility.

31. As a result of Defendants, actions and missions, Plaintiff has suffered a violation of civil rights, difficulties, discomfort and/or embarrassment, and denial of full, and equal access to public facilities, entitling him to general, special, and statutory damages. Plaintiff has retained counsel and now seeks statutory attorney fees, litigation expenses, and costs under federal and state law.

32. Plaintiff's goal in this suit to make Tarpy's fully accessible to persons with similar

mobility disabilities.

# FIRST CLAIM:

## VIOLATION OF THE ADA, TITLE III

**[42 U.S.C. §§ 12101 et seq.]**

33. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

34. Plaintiff was at all times relevant here a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

35. Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to access and use the subject facilities.

36. The subject property and facility are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. § 12181(7).

37. The acts and omissions of Defendants, as detailed in the in the preceding paragraphs and incorporated herein by reference, constitute multiple violations of Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.) and the implementing regulations at 28 C.F.R. Part 36. Tarpy's failed to remove readily achievable architectural barriers and failed to modify policies, practices, or procedures to provide full and equal access to guests with disabilities.

38. Each of the above barriers was independently sufficient to deny Plaintiff full and equal access, and collectively they demonstrate systemic noncompliance with the ADA and its regulations.

39. While the foregoing barriers reflect the detailed and tangible obstacles Plaintiff personally encountered during his visit to Tarpy's, this list is not exhaustive. Plaintiff did not undertake a comprehensive facility-wide inspection, and the presence of one barrier may implicate multiple ADA provisions. Additional violations may exist or emerge through further investigation. These allegations are therefore stated without prejudice and may be supplemented as appropriate during discovery or trial.

40. Plaintiff alleges on information and belief that the Restaurant was designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA.

41. Here, Defendants violated the ADA by designing or constructing (or both) Tarpy's in a manner that did not comply with federal disability access standards even though it was practicable to do so.

42. The removal of each of the barriers complained of by Plaintiff were at all times here mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA.

43. As noted throughout this Complaint, the removal of each of the architectural barriers complained of here was also required under California law.

44. Plaintiff alleges on information and belief that Tarpy's was modified after January 26, 1992. Any alterations, structural repairs, or additions since January 26, 1992, have independently triggered requirements for the removal of barriers to access for disabled persons per § 12183 of the ADA.

45. Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits that are unequal to that afforded to people without disabilities; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of the Restaurant to individuals with disabilities; (c) failing to remove architectural barriers in existing facilities where such removal is readily achievable; and (d) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of Tarpy's available through alternative methods if such methods are readily achievable. On information and belief, as of the date of Plaintiff's most recent visit to Tarpy's and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiff and to other similarly mobility disabled persons in other respects, which violate Plaintiff's rights to full and equal access and which

discriminate against him on the basis of his disability, thus wrongfully denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA.

46. The ability to safely park, enter, exit, and dine at Tarpy's without encountering accessibility barriers is a fundamental necessity. Without this ability, Plaintiff cannot fully and equally access the goods and services offered at Tarpy's. The benefits of ensuring accessibility far outweigh the costs of removing readily achievable barriers. These costs are intrinsic to operating a public accommodation, akin to other essential business functions. Therefore, removing these barriers is readily achievable. Based on publicly available information, Tarpy's is valued at over one million dollars, indicating substantial financial resources to cover the modest costs of modifications. Furthermore, the Department of Justice has identified many of these types of barriers as presumptively readily achievable to remove.

47. Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.

48. Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

49. Plaintiff brings this action, not only to remedy the specific discriminatory conditions he encountered, but also to secure equal access for others as assembly affected. As a private attorney general, Plaintiff seeks to enforce rights conferred by federal law for the benefit of the public at large, and to ensure that defendant facilities compliant with accessibility requirements going forward.

WHEREFORE, Plaintiff requests relief as outlined below.

//

//

//

**SECOND CLAIM:**

**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

**[Cal. Civil Code §§ 51 et seq.]**

50. Plaintiff repleads and incorporates by reference, as if fully set forth again here, the allegations contained in all paragraphs of this Complaint and incorporates them here by reference as if separately repled hereafter.

51. Tarpy's is a business establishment under the Unruh Act.

52. Defendants are the owner and/or operators of a business establishment.

53. Defendants violated the Unruh Act by their acts and omissions:

- Failure to construct or alter Tarpy's in compliance with state building code and state architectural requirements;
- Failure to remove known barriers to access at Tarpy's;
- Failure to modify policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages, facilities, privileges, or services of Tarpy's; and
- Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal. Civil Code § 51(f).

54. Plaintiff has experienced barriers to access at Tarpy's, all of which have caused him difficulty, discomfort, and embarrassment.

55. On information and belief, Tarpy's is also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant(s)/expert(s).

56. These barriers to access render Tarpy's and its premises inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. Plaintiff prays for leave to amend this Complaint, if necessary, to obtain full injunctive relief as to barriers that limit or deny

full and equal access to persons with similar mobility disabilities.

57. Each violation of the ADA constitutes a separate violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief under California law, including, but not limited to, Civil Code § 52(a).

58. As for Defendants' violations of the Unruh Act that are not predicated on violations of the ADA, Defendants' behavior was intentional: they were aware of or were made aware of their duties to remove barriers that prevent persons with mobility disabilities like Plaintiff from obtaining full and equal access to Tarpy's. Defendants' discriminatory practices and policies that deny full enjoyment of Tarpy's to persons with physical disabilities reveal actual and implied malice and conscious disregard for the rights of Plaintiff and other similarly disabled individuals. Defendants have thus engaged in willful affirmative misconduct in violating the Unruh Act.

59. On information and belief, the access features of Tarpy's have not been improved since Plaintiff's visits there. Plaintiff's injuries are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible facilities for Plaintiff and other persons with similar mobility disabilities.

60. At all times mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that his barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiff and upon other persons with similar mobility disabilities, but Defendants failed to rectify the violations, and presently continues a course of conduct in maintaining barriers that discriminate against Plaintiff and similarly situated disabled persons.

WHEREFORE, Plaintiff requests relief as outlined below.

### THIRD CLAIM:
### VIOLATION OF THE CALIFORNIA HEALTH AND SAFETY CODE
**[Cal. Health and Safety Code §§19955 *et seq.*]**

61. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the

allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

62. Health & Safety Code §19955 provides in pertinent part:

> The purpose of this part is to ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part "public accommodation or facilities" means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers. When sanitary facilities are made available for the public, clients or employees in such accommodations or facilities, they shall be made available for the handicapped.

63. Health & Safety Code §19956, which appears in the same chapter as §19955, provides in pertinent part, "accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code …" Health & Safety Code §19956 was operative July 1, 1970, and applies to all public accommodations constructed or altered after that date.

64. On information and belief, portions of Tarpy's and/or of the building(s) were constructed and/or altered after July 1, 1970, and substantial portions of Tarpy's and/or the building(s) had alterations, structural repairs, and/or additions made to such public accommodations after July 1, 1970, thereby requiring Tarpy's to be subject to the requirements of Part 5.5, §19955, *et seq.,* of the Health & Safety Code upon such alteration, structural repairs or additions per Health & Safety Code §19959.

65. Under the authority delegated by Government Code §4450, et seq, the State Architect promulgated regulations for the enforcement of these provisions. Effective July 1, 1982, Title 24 of the California Building Standards Code adopted the California State Architect's Regulations, and these regulations must be complied with as to any alterations and/or modifications of Tarpy's and/or the building(s) occurring after that date. Construction changes before this date but after July 1, 1970 triggered access requirements under the "ASA" requirements, the American Standards Association Specifications, A117.1-1961.

66. On information and belief, at the time of the construction and modification of said building, all buildings and facilities covered were required to conform to each of the standards and specifications described in the American Standards Association Specifications and/or those contained in the California Building Code.

67. Tarpy's is a "public-accommodations or facilities" within the meaning of Health & Safety Code §19955, *et seq.*

68. As a result of the actions and failure to act of Defendants, and because of the failure to provide proper and legally accessible public facilities, Plaintiff was denied Plaintiff's right to full and equal access to public facilities and suffered a loss of civil rights and rights as a person with physical disabilities to full and equal access to public facilities.

WHEREFORE, Plaintiff requests relief as outlined below.

## FOURTH CLAIM:

## VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT

### [Cal. Civil Code §§ 54 *et seq.*]

69. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

70. Tarpy's is a place of public accommodation and/or places to which the public is invited and, as such, must comply with the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

71. The CDPA guarantees, among other things, that persons with disabilities have the same right as the public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

72. The CDPA also guarantees, among other things, that persons with disabilities have a right to full and equal access, as other members of the public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code § 54.1(a) (1).

73. The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA,

California Civil Code § 54.1(d).

74. Defendants have violated the CDPA by, among other things, denying and/or interfering with Plaintiff right to full and equal access as other members of the public to the accommodations, advantages, and its related facilities due to his disability.

WHEREFORE, Plaintiff requests relief as outlined below.

### PRAYER FOR RELIEF:

1. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

2. Issue a declaratory judgment that Defendants' actions, omissions, and failures violate and continue to violate the law, including, but not limited to, the following: failing to construct and/or alter the subject premises in compliance with applicable federal and state access regulations/codes/requirements, failing to remove access barriers where "readily achievable," failing to make reasonable modifications in policy and practice for Plaintiff and other similarly-situated disabled persons;

3. Issue a preliminary and permanent injunction enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To provide reasonable modifications in policies and practices for persons with mobility disabilities to ensure access to all services, facilities, and

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES
18

      accommodations at Tarpy's;

    c. To modify Tarpy's and related facilities to provide full and equal access to persons with mobility disabilities, including removal of all barriers that violate applicable federal and state access regulations, codes, and requirements;

    d. To maintain such accessible features once they are provided;

    e. To train Defendants' employees and agents on how to accommodate the rights and needs of mobility disabled persons; and

    f. To implement nondiscrimination protocols, policies, and practices to ensure full and equal access for persons with mobility disabilities;

4. Retain jurisdiction over the Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts, omissions, failure to maintain accessible public facilities as complained of herein no longer occur, and cannot recur;

5. Award to Plaintiff all appropriate damages, including, but not limited to, statutory damages, general damages, treble damages, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

6. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

7. Award pre- and post-judgment interest as permitted by law; and

8. Grant any other relief that this Court may deem just and proper.

Date: July 9, 2025

IRAKLI KARBELASHVILI
ALLACCESS LAW GROUP

    /s/ Irakli Karbelashvili
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: July 9, 2025

IRAKLI KARBELASHVILI
ALLACCESS LAW GROUP

　　*/s/ Irakli Karbelashvili*
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER